This appeal is from a final decree dismissing the amended bill of complaint filed by plaintiffs, appellants here, in a proceeding whereby it was sought to enjoin the town officials of Lauderdale-by-the-Sea from levying and collecting taxes and committing and doing certain other acts and things, therein alleged, and wherein it was also prayed that the Act establishing the Town and under the purported authority of which said officials were acting, be declared invalid and void.
Plaintiffs' original bill was dismissed by the court below, with leave to amend, upon the motion of defendants that the bill of complaint (1) failed to allege sufficient facts to show an equitable cause of action, (2) attempted to collaterally attack the validity and legality of a municipality created by the legislature of the State of Florida, (3) affirmatively showed that any cause of action which the petitioners might have could be adequately prosecuted in an action at law, and (4) affirmatively showed that the petitioners had no cause of action either in equity or at law. The amended bill was attacked by motion to dismiss on the same grounds, and upon the additional ground that there was pending a quo warranto proceeding with respect to the same controversy involved in the instant suit. The amended bill was dismissed without leave to amend. No grounds were stated by the Chancellor upon which to base his orders of dismissal, and this court is committed to the rule that, if any of the grounds of the motion to dismiss were well founded and fatal to the relief prayed, this would be sufficient to support a decree dismissing the bill. Williams v. Ricou et al., 143 Fla. 360, 196 So. 667.
While the majority opinion affirming the final decree of dismissal entered by the court below is perhaps fully justified, on the state of the record before this court, it the opinion of the writer that where, as here the organic invalidity of an Act is patent upon the face of the enactment, this court should, sua sponte, consider the constitutional question involved and remand the cause for trial upon appropriate pleadings.
The constitutional question involved here relates to the qualifications of the electors voting in the referendum election by which the Act in question, being Chapter 24658, Laws of Florida, Special Acts of 1947, was adopted.
Article IX of the Act, which sets up the machinery for the adoption of the Act by a referendum election, provides in its Section 2 that "Section 2. The qualification of voters or electors at the referendum election shall be controlled by provisions of Article IV, Section 2 and Section 3, of this charter. All qualified voters or electors in the referendum election must register in a book provided for by the election commission; * * *." *Page 859 
The "qualification of voters or electors", as prescribed by Section 3 of Article IV of the Act, is as follows: "Section 3. Every person of the age of twenty-one years and upwards who in any State in the union who is 21 years of age or over and who shall at the time of registration be a citizen of the United States, and a freeholder in the Town of Lauderdale-by-the-Sea owning real property located within the limits of the said Town for not less than six months prior to the date of registration for election, shall be deemed a qualified elector to vote in all elections pertaining to municipal affairs of the Town of Lauderdale-by-the-Sea, excepting only Bond elections. * * *"
Section 21 of Article 3 of our Constitution, as amended in 1938, expressly provides that laws "establishing or abolishing municipalities, or providing for their government, jurisdiction and powers, or altering or amending the same" shall not, in the absence of notice of intention to apply for passage of such laws, become operative or effective "until ratified or approved at a referendum election to be called and held in the territory affected."
Such referendum elections are elections under the Constitution and may be participated in only by those persons who are deemed to be qualified electors under the provisions of Section 1 of Article 6 of our Constitution. Pitt v. Belote, 108 Fla. 292,146 So. 380; Stewart v. New Smyrna Inlet District et al., 100 Fla. 1126, 130 So. 575, followed in Standard Kaolin Co. v. Special Road Bridge Dist. No. 13 of Lake County, 101 Fla. 823,132 So. 864. See also Chavous v. Goodbread, 156 Fla. 599, 23 So.2d 761, and State ex rel. Gibbs v. Couch, 139 Fla. 353, 190 So. 723, wherein this court recognized the application of Section 21 of Article 3, as amended in 1938, to municipal corporations.
By the provisions of Section 1 of Article 6 of our Constitution, a qualified elector authorized to vote in elections under the Constitution must have "resided and had his habitation, domicile, home and place of permanent abode in Florida for one year and in the county for six months."
The Legislature can neither add to nor take from the qualifications of electors authorized to vote in elections under the Constitution. Riley v. Holmer, 100 Fla. 938, 131 So. 330; State ex rel. Lamar v. Dillon, 32 Fla. 545, 14 So. 383, 22 L.R.A. 124. Consequently, the Legislature was without authority to extend to citizens and residents of states other than the state of Florida the right to participate in the referendum election here in question. Neither could it deny to "qualified electors" who were not freeholders the right to so participate.
Since the inception of this republic, occasional attempts have been made to restrict franchise. History has proven that government is stronger and more efficient where it derives its authority from the consent of the governed. The fact that the Charter Act here in question makes no provision for non-freeholders to vote in the referendum election will be construed as denying the right of suffrage to less fortunate persons not members of the privileged class of property owners. Such exclusion would be contrary to the type of government which has sustained us during many important eras of history. If a strict interpretation was placed on the qualifications of voting in accordance with the charter, and suffrage denied to non-freeholders, it cannot be said that the municipality has derived its authority from the consent of the governed. To deny suffrage to a less fortunate class is to disarm them of their most effective weapon for the enforcement of their political rights.
Even though the referendum election has already been held, and the Act here in question approved, it is the opinion of the writer that a judicial determination should be made as to whether or not such election complied with the organic requirements of our law. If the number of illegal votes by non-resident freeholders voting in said election is proved to be sufficient to change the result of the election, then the Act cannot be said to have been ratified or approved by a majority of the "qualified electors" and is of no effect. Moreover, if it is proved that qualified electors, as defined by Section 1 of Article 6, supra, have been *Page 860 
denied the right to vote in the referendum election because he or she was not a freeholder, or for any other cause, then such election was illegal and inoperative as a ratification or adoption of the Act.
For the reasons stated, the cause should be reversed, with directions to the Chancellor to grant to the parties opportunity to have determined by proper pleading and proof whether or not a referendum has been held in accordance with the requirements of our Constitution.
ADAMS, J., concurs.