

# THE ATTORNEY GENERAL
# OF TEXAS

Overruled by Carrington v. Ra[illegible]
___U.S.___ 85 S.Ct. 775 (1965)

AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

November 6, 1963

affirms WW-157
S-18

Honorable Jack N. Fant
County Attorney
El Paso County
El Paso, Texas

Opinion No. C-173

Re: Construction and constitutionality of Article 5.02, Texas Election Code, relative to voting by members of the Armed Forces while on active duty.

Dear Sir:

You have requested an opinion on the construction and constitutionality of the following provisions in Article 5.02, Vernon's Texas Election Code, which were added by an amendment enacted by the 58th Legislature (Acts 58th Leg., 1963, ch. 424, sec. 13):

> "Notwithstanding any other provision of this section, any member of the Armed Forces of the United States or component branches thereof who is on active duty in the military service of the United States may vote only in the county in which he or she resided at the time of entering such service so long as he or she is a member of the Armed Forces. This restriction applies only to members of the Armed Forces who are on active duty, and the phrase 'time of entering such service' means the time of commencing the current active duty. A re-enlistment after a temporary separation from service upon termination of a prior enlistment shall not be construed to be the commencement of a new period of service, and in such case the county in which the person resided at the time of commencing active service under the prior enlistment shall be construed to be the county of residence at the time of entering service."

You have also asked for an opinion on corresponding provisions in Article 5.02 of the Election Code as amended by Chapter 430, Acts 58th Legislature, which will take

effect and supersede the above-quoted provisions if the proposed constitutional amendment abolishing payment of the poll tax as a prerequisite for voting is adopted at the election to be held on November 9, 1963. These provisions are quoted at a later point in the opinion.

You have asked the following questions:

> "1. What construction or interpretation does your Department make of the first sentence in paragraph two of Article 5.02, Texas Election Code, as amended, which reads: 'Notwithstanding any other provision of this section, any member of the Armed Forces of the United States or component branches thereof who is on active duty in the military service of the United States may vote only in the county in which he or she resided at the time of entering such service so long as he or she is a member of the Armed Forces.'?
>
> "2. What construction or interpretation does your Department make of the remaining two sentences in paragraph two of Article 5.02?
>
> "3. What is meant by the term 'temporary separation' in the third sentence of paragraph two of Article 5.02?
>
> "4. In the event the poll tax amendment is adopted at the election to be held on November 9, 1963, then what construction do you make of the amended portion of Article 5.02, Texas Election Code, effective February 1, 1964, which reads: '* * * provided that any member of the Armed Forces of the United States or component branches thereof, or in the military service of the United States, may vote only in the county in which such person resided at the time of entering such service.'?
>
> "5. Are the provisions contained in Article VI, Section 2 of the Texas Constitution and amended Article 5.02 of the Texas Election Code, as pertains to the right of members of the Armed Forces to vote in Texas, violative of or repugnant to Section 1 of the 14th Amendment to the United States Constitution?"

Section 1 of Article VI of the Texas Constitution enumerates the classes of persons who are not allowed to vote in this State. Section 2 of Article VI sets out the qualifications and requirements for voting. The general qualifications are stated as follows:

> "Every person subject to none of the foregoing disqualifications who shall have attained the age of twenty-one (21) years and who shall be a citizen of the United States and who shall have resided in this State one (1) year next preceding an election and the last six (6) months within the district or county in which such person offers to vote, shall be deemed a qualified elector; and provided further, that any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before offering to vote at any election in this State and hold a receipt showing that said poll tax was paid before the first day of February next preceding such election. * * *"

Prior to 1954, a provision in Section 1 of Article VI disqualified members of the regular military establishments from voting in this State. The historical background of this provision is described in a commentary published in Vernon's Annotated Texas Statutes, Volume 9, page XVII, in the year 1952:

> "The Second Congress /of the Republic of Texas/ in 1837 enacted the first election law * * *. This first act contained a novel section providing 'that regular enlisted soldiers, and volunteers for during the war, shall not be eligible to vote for civil officers.' This provision was no doubt inspired by the mutinous conduct of the nonresident volunteers who had been recruited in the United States after the Battle of San Jacinto. They had defied the provisional government and on one occasion in July, 1836, had sent an officer to arrest President David G. Burnett and his cabinet to bring them to trial before the army. They had continued their rebellious conduct after Sam Houston became the first president under the Constitution of 1836. It was not until May, 1837, that Houston was able to dissolve the

army and eliminate this threat to civil authority. This provision disfranchising soldiers in the regular army was placed in the 1845 Constitution of the State of Texas and has remained in each succeeding constitution. It was modified in 1932 to exempt the National Guard and reserve and retired officers and men."

In 1954, Section 1 of Article VI was amended to delete the disqualification against persons in military service, and Section 2 was amended to add the following provision:

"* * * Any member of the Armed Forces of the United States or component branches thereof, or in the military service of the United States, may vote only in the county in which he or she resided at the time of entering such service so long as he or she is a member of the Armed Forces."

Two former opinions of this office, Opinion S-148 dated December 18, 1954, and Opinion WW-157 dated July 8, 1957, have dealt with several questions of construction arising under the 1954 amendment of the Constitution. The following quotation is from Opinion S-148:

"Formerly, National Guardsmen, reservists and draftees in active service could vote at the place of their legal residence at the time of voting (provided they had resided within the State for one year and within the county for six months) without regard to the place of residence at the time they entered service. Active members of the regular establishment could not vote at all. Now, all these groups are qualified electors if they meet other requirements, but none of them may vote anywhere in Texas except in the county where they resided when they entered service. If a person in military service changes his legal residence to some place other than the county in Texas in which he resided at the time he entered service, he cannot vote in this State.

"Throughout this opinion the term 'residence' means legal residence as distinguished from actual residence.

"The constitutional amendment does not change the rules for determining what place is the legal residence of the voter, nor does it mean that in all circumstances a person in military service will be entitled to claim a voting residence in the county of which he was a resident at the time he entered service. Place of residence is still to be determined in the same way that it has always been. Absence from the county or State for the purpose of performing military service does not of itself cause a loss of residence, but it is possible for a person to abandon his old residence and acquire a new residence during time of service. Tex.Const. Art. XVI, Sec. 9; Clark v. Stubbs, 131 S.W.2d 663 (Tex. Civ.App. 1939); Struble v. Struble, 177 S.W. 2d 279 (Tex.Civ.App. 1943); Pettaway v. Pettaway, 177 S.W.2d 285 (Tex.Civ.App. 1943); Robinson v. Robinson, 235 S.W.2d 228 (Tex. Civ.App. 1950); 15 Tex. Jur. 715, Domicile, Sec. 6. If he does so, and thereby changes his residence to some other county, he loses his right to vote in this State while he continues in service, unless he re-establishes his residence in the county in which he resided when he entered service. Further, no person who entered service as a resident of another State may acquire a voting residence in Texas while he is in service.

"It is our opinion that the restriction to voting in the county of residence at the time of entering service applies only to persons who are on extended active duty. Members of the National Guard and reservists who are not on extended active service and retired military personnel are not subject to this restriction. Further, 'county of residence at the time of entering such service' means the county in which the person resided at the time he began his current active service. To illustrate: A person, while residing in County A, joins one of the reserve components but does not go into active service. He later moves to County B. After he has fulfilled the length of

> residence requirement, he may vote in County B; in fact, he could vote nowhere else. While living in County B, he is called into active service. During this time his place of voting is in County B, the county in which he resided when he went into active service. After his release from that tour of duty, he changes his residence to County C. His place of voting is in County C so long as he continues to live there. If he is again called into active service while living in County C, that is the place where he will vote."

The question in Opinion WW-157 was whether a person who had been stationed at an air base in Victoria County, who after discharge had subsequently re-enlisted, with some period of time intervening between the discharge and re-enlistment, was qualified to establish a domicile for voting purposes in Victoria County. In answer, the opinion said:

> "What is meant by 'the time of entering such service' within the meaning of the Constitution? Is it the time of the subsequent enlistment or the time of the original entry into service? If the subsequent period of service is a mere continuation of the prior period, the time of re-enlistment is not the time of entering such service within the meaning of the Constitution, for the restriction lasts 'so long as he or she is a member of the Armed Forces.'
>
> "No doubt, in some instances an airman may be completely separated from the service in a very real sense by discharge and later re-enlist. In such cases it cannot be said that his re-enlistment or decision to re-enlist constituted the second period of service a continuation of the prior period of service, and the time of entering such service within the meaning of the Constitution is the time of his re-enlistment. The mere fact that there has been a discharge and a time lapse between the date of discharge and the date of re-enlistment is not, however, controlling on this question. The law looks to the substance and not to the mere form of the transaction. It can be judicially noted that

> frequently re-enlistment papers are actually signed prior to discharge and post-dated at some later date to the discharge date. On some occasions the service man retains the same privileges, rank, and status as well as the same organization assignment and job assignment in the subsequent enlistment as in the prior period of service. In such cases the discharge and re-enlistment are mere legal fictions and the subsequent period of service is merely a continuation of the prior period. The date of re-enlistment is not the 'time of entry into such service' within the meaning of the Constitution. Residence in Victoria, Texas, at that time alone cannot be used as a basis of claiming voting residence in Texas during the subsequent period of service.
>
> "Therefore, we hold that an airman stationed at an air base located in Victoria County who receives a bona fide discharge and who completely severs his active duty relation with the Air Force and subsequently re-enlists with some period of time intervening between discharge and re-enlistment is qualified to establish a residence in Victoria County for voting purposes if the discharge and re-enlistment are not mere legal fictions so as to constitute a continuation of the prior period of service."

Articles 5.01 and 5.02 of the Election Code are the statutory counterparts of Sections 1 and 2 of Article VI of the Constitution. Following the amendment of the Constitution in 1954, no corresponding change was made in the statutes until this year, when a series of amendments to the Election Code were enacted in Senate Bill 61, Chapter 424, Acts of the 58th Legislature, 1963.

Senate Bill 61 was drafted by an interim Election Law Study Committee created by the 57th Legislature (S.C.R. 30, 57th Leg., R.S. 1961). The files and reports of the Committee reveal that the amendment to Article 5.02 undertook to express in statutory form the constitutional provision as interpreted in the opinions of the Attorney General. The second sentence of the new paragraph in Article 5.02 states the holding of Opinion S-148 which construed the restriction

on place of voting as applying only to periods of active service. The third sentence undertakes to summarize in a brief statement the holding of Opinion WW-157 on the effect of a temporary break in service between enlistment periods.

We are in agreement with the construction given to the constitutional provision in Opinions S-148 and WW-157. And we are further of the opinion that the construction of the constitutional provision is applicable to Article 5.02. We therefore believe that those opinions sufficiently answer your first two questions.

In answer to your third question, as to the meaning of "temporary separation" in Article 5.02, we think the term was intended to mean a separation under circumstances described in Opinion WW-157 which would not prevent the subsequent period of service from being in essence merely a continuation of the prior period. It is not possible to lay down a blanket rule setting out the circumstances in detail, as each case must be determined on its own particular set of facts as to the acts and intention of the individual.

Two examples will illustrate how these provisions operate. Suppose a soldier, while stationed at Fort Bliss in El Paso County, has established his legal residence there (but without voting rights, because he did not reside in that county at the time of entering service) and intends to live there after eventual retirement from military service. He completes an enlistment and is discharged, but at all times his intention for the present is to re-enlist and continue in military service. Even though some period of time may elapse between his discharge and his re-enlistment, the two enlistments would ordinarily constitute one continuous period of service within the meaning of these provisions. Suppose, however, that at the time of his discharge he has no intention of re-entering military service. After seeking employment he finds nothing to his liking and he thereupon decides to go back into military service. Ordinarily this would be the beginning of a new period of service, and he could vote in El Paso County if otherwise qualified.

The Constitution provides that a person in military service may vote only in the county in which he resided at the time of entering service. (It should be noted that the place of voting is the county of residence, not the county in which the enlistment occurred, which might be in some other place than the place of legal residence.) In a brief submitted to this office by an interested organization, the contention is made that this provision of the Constitution attempts to

regulate voting rights outside Texas as well as within the State. It goes without saying that the Texas Constitution cannot regulate voting rights of persons at any place other than within the State of Texas, and cannot affect the voting rights of residents of other States while stationed in Texas. This provision relates only to residents of this State; but it does relate both to persons who were residents of Texas before entering service and to persons who became residents of Texas after entering service. If the only place at which a person may vote in this State is the county in which he resided at the time of entering service, and if at that time he did not reside in any county in Texas, it follows that he cannot vote in this State. Accordingly, it was said in Opinion S-148 that no person who entered service as a resident of another State may acquire a voting residence in Texas while he is in service.

It has been suggested in the brief that the provisions under consideration do not preclude a nonresident of Texas from establishing a legal residence and becoming a qualified elector having the privilege to vote in Texas; that a resident of Texas who enters military service cannot change his voting residence while on active duty, and that a former nonresident, after having acquired a voting residence while on active duty in this State, cannot thereafter change it to some other county; but that a resident of another State can acquire an original voting residence in Texas while in military service.

We are unable to find support for this suggestion, either in the language used or in the reason for the restriction. As we view it, the purpose of the restriction is to prevent a concentration of military voting strength in localities where military installations are situated, which "might well lead to complete domination and control of local politics by the overwhelming number of military men to the prejudice of the civilian citizens of the community." Interpretive commentary under Art. VI, Sec. 1, Vernon's Ann. Tex. Const., Vol. 2, p. 336. The concentration sought to be prevented could come about from voting by former residents of other States as readily as from voting by former residents of other counties in this State. We fail to see the rationale for allowing a resident of some other State who is stationed at Fort Bliss to acquire a voting residence in El Paso County, while denying that privilege to a resident of Texas; nor do we see any rationale for freezing his voting residence in El Paso County if he is transferred to a military installation in some other county or State.

We are not impressed by the suggested explanation that the person who resided in Texas at the time of entering service does have a place to vote in Texas (i.e., the county of his residence at the time of entering service), but the person who resided in some other State at the time of entering service would have no place to vote in Texas if he could not acquire a voting residence at the place where he was stationed. The 1954 amendment evinces an intention to remove the disfranchisement of active members of the regular military establishments, but subject to the limitation that they will not be allowed to acquire a new voting residence in this State while in military service. It does not show an intention to enfranchise any person or class of persons in military service on any other terms. It should be kept in mind that a person who enters military service as a resident of some other State gives up his voting residence in that State only by his own volition. So far as we are able to find, there is not a State in the Union whose laws cause a resident to lose his residence and concomitant voting rights against his will by reason of absence in military service. If he loses his residence and voting privileges at the place where he resided when he entered service, it is by his own desire to acquire a new residence at a different place. You have stated that many of the military personnel tell you that when they write to the State and county where they entered the service, so as to vote absentee there, that State takes the position that they have now lost their residence there. In these cases, it would seem that the individual by his own voluntary acts has relinquished his former residence or that the administrative officers of his home State have misinterpreted the law of that State.

It has also been suggested that the law discriminates against residents of other States and is therefore repugnant to the 14th Amendment of the United States Constitution. We do not agree that it discriminates against nonresidents. A Texas resident is under the same limitation as a nonresident. No matter how much a soldier at Fort Bliss might prefer El Paso County to his home county in East Texas, or North Texas, or South Texas, and might want to make El Paso his county of legal residence, he has to choose between acquiring a domicile in El Paso County and losing his right to vote, for if he does change his residence to El Paso County he also is left without a voting place.

It is true that military men who have been many years away from their place of residence at the time of entering service may lose interest in the affairs of that locality, but may be keenly interested in the affairs of the locality where

they are stationed, and the privilege of retaining their voting residence at the former place may be to them an empty one. It is also true that the Texas resident stationed in Texas could still vote for state offices and on state-wide issues of interest to him, whereas the resident of some other State would find no area of interest in the elections of his home State except for President and Vice-President of the United States. These are considerations going to the policy, wisdom, and equity of the constitutional restriction, rather than to its interpretation. We hasten to state that our function is merely to construe the provisions as they are written.

In your fourth question you ask for a construction of the provision on military voting in the amendment of Article 5.02 of the Election Code which will take effect if the proposed constitutional amendment abolishing payment of the poll tax as a prerequisite for voting is adopted at the election to be held on November 9, 1963. Acts 58th Leg., 1963, ch. 430, sec. 1, p. 1103. The pertinent portion of the proposed amendment of Article VI, Section 2 of the Constitution reads:

> "Section 2. Every person subject to none of the foregoing disqualifications who shall have attained the age of twenty-one years and who shall be a citizen of the United States and who shall have resided in this state one year next preceding an election and the last six months within the district or county in which such person offers to vote, shall be deemed a qualified elector; provided that any member of the Armed Forces of the United States or component branches thereof, or in the military service of the United States, may vote only in the county in which he or she resided at the time of entering such service so long as he or she is a member of the Armed Forces; and provided further, that before offering to vote at an election a voter shall have registered if required by law to do so.* * *"

Insofar as it concerns place of voting by persons in military service, there is no change in the meaning of the section although the language has been rearranged. The text of Article 5.02 of the Election Code, as amended to take effect in event of adoption of the constitutional amendment, is as follows:

> "Every person subject to none of the foregoing disqualifications who shall have attained the age of twenty-one years and who shall be a citizen of the United States and who shall have resided in this state one year next preceding an election and the last six months within the district or county in which such person offers to vote, and who shall have registered as a voter if required to do so, shall be deemed a qualified elector; provided that any member of the Armed Forces of the United States or component branches thereof, or in the military service of the United States, may vote only in the county in which such person resided at the time of entering such service. * * *"

This provision tracks the proposed constitutional amendement, except for omission of the words "so long as he or she is a member of the Armed Forces." Since the provision deals with the voting place of members--not former members or future members--of the Armed Forces, the omission of the qualifying clause does not change its meaning. Unlike the amendment enacted by Chapter 424, this version of the statute does not contain the provisions incorporating the interpretations of the Attorney General's opinions. But the addition of those provisions did not alter existing law; it merely verbalized the existing law into statutory form. Accordingly, the law as it will exist if Chapter 430 takes effect will be the same as it is now.

Your fifth question is whether the constitutional and statutory provisions under consideration violate Section 1 of the 14th Amendment to the United States Constitution, which reads as follows:

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We have seen that the law of this State completely disfranchised all persons in military service for almost a hundred years and disfranchised members of the regular establishments for twenty more years. If those provisions did not offend the Federal Constitution, it is evident that the less drastic provisions of the present law also are not subject to that infirmity. The 14th Amendment was ratified in 1868. During the intervening years before Section 1 of Article VI of the Texas Constitution was amended in 1954, there was no case directly raising the validity of the Texas law, but the implication in two cases decided by the Texas courts seems to be that the State had the power to withhold suffrage from persons in military service. In Savage v. Umphries, 118 S.W. 893, 899 (Tex.Civ.App. 1909), the court said:

> "Who shall exercise suffrage is a fundamental question, which the body politic must decide upon a just view of the true relation between the power of the suffragans and the rights of the whole people. Hence the exercise of the elective franchise is not a natural or God-given right, but is, as the word 'franchise' implies, a right conferred by the state or body politic. In other words, as is said by an eminent authority on constitutional law, the questions whether one is fitted by intelligence to perform the function of an elector, or has such interests in the matters controlled through his suffrage as to check the misuse of power which self-interest prompts, or has such community of interest in the laws which are to govern the community, which should fit him for the discharge of the duties of a suffragan, must be determined by the body politic."

One of the holdings in that case was that under Article VI, Section 1 of the Texas Constitution, a person in the service of the army of the United States was not entitled to vote at all. 118 S.W.2d at page 908. In McBeth v. Streib, 96 S.W. 2d 992, 995 (Tex.Civ.App. 1936), the court said:

> "Our organic and statutory laws, in plain terms, deny the right of franchise to citizens in the military service. The reasons for such denial were properly determined by the adopters of the Constitution and members of our lawmaking bodies."

Solon v. State, 54 Tex.Crim. 261, 114 S.W. 349, 352 (1908) describes the nature of suffrage as follows:

> "* * * The true rule is that the right to vote is not a necessary or fixed incident of citizenship, or inherent in each and every individual, but that voting is the exercise of political power, and no one is entitled to vote, unless the people in their sovereign capacity, have conferred on him the right to do so. It may be laid down as a general proposition that the right of suffrage may be regulated and modified or withdrawn by the authority which conferred it. * * * In the case of State v. Dillon, 32 Fla. 545, 14 So. 383, 22 L.R.A. 124, in treating this general subject, the court say: 'The right to vote is not an inherent or absolute right found among those generally reserved in bills of rights, but its possession is dependent upon constitutional or statutory grant. Subject to the limitations contained in the federal Constitution, the elective franchise is under the control of the sovereign power of the states, expressed in Constitutions or statutes properly enacted. * * *'"

The United States Constitution does not confer on or guarantee to citizens the right to vote, but it does limit the power of a State to abridge or deny to some citizens a right of suffrage which the State has granted to others. 18 Am.Jur., Elections, §§ 46, 47; 29 C.J.S., Elections, §§ 5-8. The 15th and 19th Amendments prohibit denial of the right to vote because of race, color, previous condition of servitude, or sex. The 14th Amendment prohibits a State from abridging the privileges or immunities of citizens of the United States or from denying the equal protection of the laws to any person within its jurisdiction; but these prohibitions do not preclude a State from making reasonable classifications of persons or things for the purpose of legislation if all within the same class are treated alike. The general principles on the validity of classifications are stated in the following quotations from 16A C.J.S. 240 et seq., Constitutional Law, § 489:

> "Class legislation is invalid where the classification is arbitrary and unreasonable. The provision of the Fourteenth Amendment to the federal Constitution declaring that no

state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, or deny to any person within its jurisdiction the equal protection of the laws, as well as provisions commonly found in state constitutions prohibiting the enactment of laws granting any special or exclusive privileges, immunities, or franchises, * * * render void all state statutes which make any unreasonable or arbitrary discrimination between different persons or classes of persons. * * *

"There is no general rule by which to distinguish a reasonable and lawful from unreasonable and arbitrary classification, the question being a practical one, dependent on experience, and varying with the facts in each case. In order to be valid a statutory classification must reasonably promote some proper object of public welfare or interest, must rest on real and substantial differences, having a natural, reasonable, and substantial relation to the subject of the legislation, and must affect alike all persons or things within a particular class, or similarly situated; but, if the legislature has power to deal with the subject matter of the classification and there is a reasonable ground for the classification and the law operates equally on all within the same class, it is valid, even though the act confers different rights or imposes different burdens on the several classes, or fails to provide for future contingencies, or though particular persons find it difficult or even impossible to comply with conditions precedent on which the enjoyment of the privilege is made to depend. * * *

"In determining whether or not a basis of classification is reasonable, it must be looked at from the standpoint of the legislature enacting it, and with reference to the conditions existing when the statute was enacted, not when the constitution was adopted. As discussed supra § 151 (4), the question of classification is one primarily for the legislature, and in the exercise of this power the legislature possesses a wide discretion. A statute will

be sustained where the basis for classification made by it could have seemed reasonable to the legislature, even though such basis seems to the courts to be unreasonable. In view of the presumptions in favor of a legislative classification, as discussed supra § 100, the legislative judgment as to classification will be upheld if any state of facts can reasonably be conceived to sustain it, and can be overthrown by the courts only when it is clearly erroneous."

The Texas Constitution classifies persons in military service for special treatment in conferring the right to vote, and accords the same treatment to all within that class. We are unable to say that there is no rational basis for the classification, and consequently it is our opinion that the provision does not violate the 14th Amendment to the United States Constitution.

## SUMMARY

The provisions of Article 5.02, Vernon's Texas Election Code, as amended by Chapter 424, Acts of the 58th Legislature, 1963, which pertain to voting by persons in military service, do nothing more than restate the law as contained in the 1954 amendment to Article VI, Section 2 of the Texas Constitution. Attorney General's Opinions S-148 and WW-157, interpreting the constitutional provisions, are reaffirmed.

The law on voting by persons in military service, as contained in the amendment to Article VI, Section 2 of the Constitution which is proposed by S.J.R. No. 1, 58th Legislature (to be submitted to a vote on November 9, 1963) and in Article 5.02 of the Election Code, as amended by Chapter 430, Acts of the 58th Legislature, which will take effect if the proposed constitutional amendment is adopted, is the same as the present law.

The provisions of Article VI, Section 2 of the Texas Constitution, and of Article 5.02 of the Texas Election Code, which provide that members of the Armed Forces of the

United States may vote only in the county in which they resided at the time of entering service, does not violate the 14th Amendment to the United States Constitution.

Yours very truly,

WAGGONER CARR
Attorney General

By Mary K. Wall
Mary K. Wall
Assistant

MKW:sj:ms

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Howard Fender
Malcolm L. Quick
Ernest Fortenberry
Paul Robertson

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone